FILED

IN THE UNITED STATES DISTRICT COURT 2019 NOV 12  AM 11: 46
WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| ROBERT COLLINS, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| | § |
| TEXAS FORENSIC SCIENCE COMMISSION | § |
| General Counsel LYNN ROBITAILLE GARCIA, | § |
| Current Commissioners JEFFREY J | § |
| BARNARD, BRUCE BUDOWLE, PATRICK | § |
| BUZZINI, MARK DANIEL, NANCY DOWNING, | § |
| JASMINE DRAKE, DENNIS JOHNSON, SARAH | § |
| KERRIGAN, JARVIS PARSONS, Texas | § |
| Department of Public Safety Crime | § |
| Laboratory Director BRADY MILLS, | § |
| Montgomery County Assistant District | § |
| Attorney ANDREW JAMES, FBI Special | § |
| Agent in Charge PERRYE K. TURNER, | § |
| Other AS-YET-UNKNOWN STATE OFFICIALS, | § |
| And other AS-YET-UNKNOWN FBI AGENTS, | § |
| Defendants | § |

A19CV1097LY

C. A. No.

JURY TRIAL DEMANDED

## COMPLAINT

NOW COMES Plaintiff, ROBERT COLLINS, filing pro se, and
complaining of Present Commissioners of the TEXAS FORENSIC
SCIENCE COMMISSION (the "Commission"), JEFFREY J. BARNARD, BRUCE
BUDOWLE, PATRICK BUZZINI, MARK DANIEL, NANCY DOWLING, JASMINE
DRAKE, DENNIS JOHNSON, SARAH KERRIGAN, JARVIS PARSONS, Texas DPS
Crime Lab Director BRADY MILLS, Commission General Counsel LYNN
ROBITAILLE GARCIA, Montgomery County ADA Andrew JAMES, FBI
Special Agent in Charge PERRYE K. TURNER, and other AS-YET-
UNKNOWN STATE and FBI OFFICIALS (collectively, the
"Defendants"), alleges as follows:

## Introduction

1. In January of 2019 and continuing thereafter, the above-named Defendants engaged in a conspiracy to discredit Plaintiff, Robert Collins, and cover up ongoing misconduct by the Texas Department of Public Safety Crime Laboratory ("DPS Crime Lab"). Plaintiff submitted a true and legitimate complaint to the Commission. The Defendant Commissioners responded, under color of law, by defaming the Plaintiff and depriving him of his Constitutional rights.

2. Plaintiff, in the normal course of his work as a court appointed expert witness, discovered serious deficiencies and misconduct by the DPS Crime Lab. The DPS Crime Lab presented false evidence and gave false testimony in the capital murder trial of Fred Lee (SOT vs. Fred Dexter Lee). The false testimony was exposed to the jury by Plaintiff and the jury returned a "not guilty" verdict. Debunking the State's DNA expert and the evidence he presented was the only defense presented by defendant Fred Lee.

3. Though the Plaintiff's work helped to result in a "not guilty" verdict for the defendant, the State's flagrant use of false evidence and perjured testimony both legally and morally demanded further action by the Plaintiff. Plaintiff filed a complaint to the Commission. The Defendants intentionally violated numerous constitutional rights of Plaintiff in its

efforts to hide the DPS Lab's wrongdoing and permit ongoing misconduct by the DPS Lab.  Defendant's actions caused unwarranted and ongoing damage to Plaintiff's constitutional rights guaranteed under the 5th, 6th and 14th Amendments to the United States Constitution. This lawsuit seeks relief from these actions and redress for the injuries caused.

## Jurisdiction and Venue

4. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation, under color of law, of Plaintiff's rights as secured by the United States Constitution.

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. Venue is proper under 28 U.S.C. § 1391(b). The parties hold State mandated meetings in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district as well.

## The Parties

6. Plaintiff Robert Collins is a self-employed DNA expert and resident of the State of Texas. Plaintiff has a B.S. in Genetics, *cum laude*, from Texas A&M University (College Station, 1994) and a Ph.D. in Molecular and Human Genetics from Baylor College of Medicine (Houston, 2000).  At the time the Plaintiff was maliciously defamed and falsely discredited by the

Defendants, Plaintiff was faithfully performing the duties of his job as a court-appointed expert while simultaneously carrying-out his duties and responsibilities as a Citizen of Texas and the United States of America.

7. At all times relevant hereto, Defendant Commissioners were duly appointed to the Texas Forensic Science Commission by Texas Governor Greg Abbott. The Defendant Commissioners were tasked under statute to authorize and conduct a proper investigation of the complaint. The remaining defendants were performing the state or federally mandated duties of the jobs.

8. All of the foregoing Defendants are sued in their individual capacities.  All acted under color of law and in the scope of their employment or official duties while engaging in the actions alleged in this Complaint.

## Background Allegations

9. A basic responsibility of the DPS Crime Lab is to securely and safely store the State's DNA evidence until its probative value can be determined by a jury. The Texas Code of Criminal Procedure Section 38.43 (Attachment 1 on the Attachment DVD) states biological evidence in unsolved cases must be preserved and retained:

(1)  for not less than 40 years, or until any applicable statute of limitations has expired, if there is an unapprehended actor associated with the offense;

-4-

10. The DPS Crime Lab failed this basic responsibility. The DNA evidence in the Fred Lee capital murder case (above) had degraded while in the DPS Crime Lab's custody for nine years and no longer represented the DNA evidence collected at the crime scene. DNA degradation while in DPS Lab custody was clearly demonstrated in the complaint to the Commission. The DNA Technical Leader of the Houston DPS Crime Lab, Andrew McWhorter, presented the false, degraded DNA evidence to the jury as if it was the actual evidence collected.

11. Additionally, Technical Leader Andrew McWhorter did not notify at least three bodies that accredit the DPS Crime Lab, as required, that the DNA evidence had degraded while stored "safely and securely" by the DPS Lab. Texas Administrative Code Rule §28.92 (Attachment 2) states:

(c) A forensic DNA laboratory shall establish and maintain a procedure that requires prompt reporting of each substantial deficiency by the laboratory. Laboratory personnel shall promptly report an incident of substantial deficiency by the laboratory to appropriate authorities, including the laboratory's director, the director of the department, the laboratory's recognized accrediting body, and the appropriate prosecutor or other criminal justice or law enforcement agency. This section does not apply to a deficiency that laboratory personnel reasonably believe to be minor and not substantial.

12. Documents obtained from the State through discovery and/or presented by the State at the trial clearly show DNA degradation had occurred. For example, the DNA report made by Technical Leader Andrew McWhorter on March 22, 2013 is shown on pages A1 through A5 of the Appendix. The DNA profiles obtained

from evidence item "vehicle (1A)" are described by DNA Section Supervisor Andrew McWhorter on Appendix page A4. The encircled text states the profiles of two individuals were found on the evidence item.  Fifty-one DNA alleles (discovery data) were identified at the sixteen DNA loci tested in this March 22,2013 analysis that enabled this accurate conclusion.

13. Thus, the DNA profiles present on evidence item "vehicle (1A)" were already known by TL Andrew McWhorter in 2013 from this initial analysis. In 2017, he ignored these prior results and selected four of the DNA extracts kept in storage at the DPS Crime Lab to be re-analyzed. Defense discovery for the data generated by this re-analysis and a valid reason for doing it were not provided after repeated requests.

14. During his testimony, (now) Technical Leader Andrew McWhorter entered an allele table containing the results he found in the re-analysis of the DNA extracts from the four evidence items. Appendix page A6 shows the allele table that was entered into evidence on January 10, 2019. The column that lists the results from "vehicle (1A)" (encircled) shows that every one of the fifty-one alleles obtained in 2008 had completely degraded and were now absent. Furthermore, all four evidence extracts that were re-processed in 2017 had severely degraded while in storage at the DPS Crime Lab. Other documents obtained

through discovery indicate DNA evidence degradation is systemic at the DPS Crime Lab and may affect hundreds of cases.

15. Plaintiff filed a complaint with the Texas Forensic Science Commission concerning the actions of the DPS Crime Lab. The Commission is charged with ensuring the accuracy and integrity of the forensic science that is used in the Texas Criminal Justice System. The Commission complaint form that was submitted by the Plaintiff is located on Appendix pages A7-A10. The "DESCRIPTION OF COMPLAINT" section of the complaint is on Appendix page A9. In the third paragraph (encircled), complaint states "…the chart was clearly an allele table of badly degraded DNA profiles that were already known. The main question was why it was even done." The DPS Crime Lab hadn't worked on the case since 2013 when the State began using Bode Technologies because the DPS Crime Lab was too slow. Not only was the DNA badly degraded, the DPS lab used it anyway and presented a fraudulent analysis to the jury in order to implicate the defendant.

16. From that day forward, Plaintiff Robert Collins has conducted an exhaustive pursuit of exposing this misconduct by the DPS Crime Lab. Despite the unconstitutional actions of the Defendants, Plaintiff will continue performing his civic responsibility to expose corruption whenever he finds it.

## Defendants' Misconduct

17. Upon receipt of the complaint and recognition of the egregious misconduct by the DPS Crime Lab, an unlawful plan to cover up the misconduct was undertaken by the Defendants. The Defendants conspired to hide the incontrovertible fact that DNA evidence had degraded while in DPS Lab custody. Failure by the DPS Lab to perform this basic obligation raises serious questions about all cases previously adjudicated in Texas that used DNA evidence processed or stored by the DPS Crime Laboratory. The fact that the disastrous consequences of systemic DNA degradation are recognized is underscored by the lengths the Defendants took to hide the fact that it had occurred.

18. The DPS Lab refused to provide the casefile containing the data generated by the lab before the trial. The trial Judge ordered it be provided through discovery and the defense asked the state for it at least twice leading up to the trial.  The Commission has also refused to provide the casefile. This again shows knowledge and collusion by all Defendants in this conspiracy.

19. Rather than perform the investigative work necessary to properly process the complaint, the Commissioners instead conspired among themselves to subvert the process and intentionally reach a corrupt decision. Specifically, the

Commissioner Defendants ignored the true complaint of DNA degradation and pretended to investigate a "strawman" complaint unrelated to DNA degradation. This fake "strawman" complaint is given on page 3 of the Commission's May 3, 2019 meeting minutes (Attachment 3) as:

> A complaint by DNA consultant, Dr. Robert Collins, alleging DPS – Houston DNA technical leader falsely reported an inconclusive result that should have been an exclusion in a capital murder trial.

20. In that regard, the Defendants conducted a sham investigation on whether the DPS Lab used the analysis software STRmix® properly and ignored the true complaint of DNA degradation. This sham investigation was conducted unlawfully by a single Commissioner in concert with the Houston-DPS lab whom the complaint was against. The sham investigation was carried out without the statutorily required panel of three Commissioners working under the authorization of the full Commission. The proper way to conduct a complaint investigation, after an investigative panel is appointed, is contained in Texas Administrative Code RULE §651.307 shown on Appendix page A11.

21. Commissioner Bruce Budowle conspired with the subject of the complaint, DPS Lab Technical Leader Andrew McWhorter, DPS Lab Director Brady Mills, Montgomery County ADA Andrew James and

other as-yet-unknown DPS Crime Lab and/or state officials to produce the sham investigation. Commissioner Budowle participating in an investigation into TL Andrew McWhorter is a flagrant conflict of interest violation that is expressly forbidden by statute. Budowle and McWhorter are co-authors on a peer-reviewed journal article (Forensic Sci Int Genet. 2019 May;40:1-8.) that was electronically published in January 2019 and published in May 2019. This is the very time frame of their sham investigation. Appendix page A12 is the National Library of Medicine (PUBMED) abstract of this article with co-authors Budowle and McWhorter's names highlighted. A finding by the Commission of misconduct by Technical Leader Andrew McWhorter would cause, at a minimum, the retraction of their co-authored article.  The results of the sham investigation were presented publicly at the Commission's Quarterly Meeting on May 3, 2019.

22. The video record of the May 3, 2019 Commission meeting is available through the Commission's website (www.txcourts.gov/fsc/meetings). A 45-minute video excerpt (Attachment 4) of the meeting is provided on the Attachment DVD provided with the complaint. The video excerpt, from approximately one hour and nine minutes (1:09) to one-hour and fifty-four minutes (1:54), contains the events described in this complaint and is herein referred to as the Meeting Video. The

times noted in this document use the elapsed meeting time shown at the bottom of the video.

23. Commissioner Budowle gave an approximately thirty-minute slide presentation of the sham investigation that starts at the beginning (1:09:00 mark) of the Meeting Video. Commissioner Budowle mis-stated the true subject of the complaint (DNA degradation while in DPS Lab custody) and proceeded to present his sham investigation.  He made numerous false statements and specious conclusions that resulted in the Commission's desired pre-planned result.

24. The full Commission went into a planned, illegal closed session at the one-hour-and-fifteen-minute mark of the meeting. The Commission intentionally and knowingly hid the documents that show DNA degradation had occurred from the Plaintiff and the public. These documents are required by the Texas Open Records Act to be shown when being discussed at an open meeting (Attachment 5). Page 40 of the Texas Attorney General's Handbook on Open Meetings states

   (a) A person in attendance may record all or any part of an open meeting of a governmental body by means of a recorder, video camera, or other means of aural or visual reproduction.

Furthermore, the Commission must announce and give a valid reason before entering an official closed session (pages 40-58). Section D on page 56 expressly states there is **"No Implied Authority for Closed Meetings."** Instead, the Commission stopped

using the publicly viewable screen and discussed documents that were unviewable to the public for five minutes. The Commission's unlawful secret viewing of a document(s) that further confirm degradation to the Plaintiff and public shows knowledge of the sham investigation and again confirms each Commission member's participation in it.

25. The presentation of the sham investigation concluded by finding there had only been a misunderstanding on the use of the STRmix® software. DNA degradation, the actual subject of the complaint, was not mentioned once during the Commission's entire thirty-minute presentation. Conversely, neither STRmix® nor the DPS lab's misuse of it were not mentioned even a single time in the Plaintiff's complaint to the Commission.

26. Plaintiff attended the Commission's quarterly meeting on May 3, 2019 expecting to present his complaint followed by the Commission voting to appoint an investigative panel (or not) as per statute. Upon learning the Commission had already taken some sort of unannounced investigative action, Plaintiff chose to make a statement after the Commission's presentation. Plaintiff was stunned by the attempted cover-up of the degraded DNA issue and the elaborate dog-and-pony show by the Commission that he had just witnessed.

27. At the one-hour-and-forty-two-minute mark of the Meeting Video, after the Commission's presentation, Plaintiff

made his statement. Plaintiff stated to the Commission and the public that the basis of his complaint was DNA degradation and not the topic just presented. Plaintiff clearly stated the basis of his complaint was degraded DNA and explained, from experience, three ways that it could have happened. The issue is the DNA is no longer the evidence collected at the crime scene and should not have been introduced by the State or the DPS Crime Lab as evidence; analyzed, unanalyzed, or even as a footnote. The DPS Lab intentionally and knowingly analyzed the degraded DNA anyway for the sole reason of producing false incriminating evidence in a capital murder trial.

28. Commissioner Budowle responded at the 1:47:45 mark of the Meeting Video by defaming the Plaintiff. He brazenly stated that the plaintiff was wrong, and they found no evidence of DNA degradation. Again, as shown previously, this statement is patently false. The Commission, under color of law, intentionally and knowingly made false statements to defame and discredit the plaintiff solely to cover up the misconduct of the DPS Lab and permit the misconduct to continue. These actions clearly surpass any "shock the conscience" standard applied. The Commission is covering up the very conduct it is supposed to protect the public from. The Commission is gaslighting the public with the false reassurance that it is doing its job.

29. The Commissioner contradicted the Plaintiff, in a public forum, stating that the Plaintiff did not have evidence for degradation. In fact, Plaintiff had the same irrefutable evidence of DNA degradation discussed above in his hand at the meeting. Commissioner told the Plaintiff he needed to "step back" with his allegations in an attempt, under color of law, to coerce and intimidate the Plaintiff. Finally, Plaintiff was denied a chance to respond to the false charges of Commissioner Budowle when the Commission Chair silenced his due rebuttal, a clear violation of the 6th Amendment's confrontation clause.

30. The unsanctioned sham investigation by Commissioner Budowle and the DPS Lab co-conspirators recommended that the Commission "Open investigative panel to guide corrective process." The Commission ignored the due process required by statute (RULE §651.307, Appendix page A11) by authorizing an investigative panel after the findings of the Commission's sham investigation. Surprised but unfazed, Plaintiff left the meeting determined to expose the illegal activities that he had witnessed at the Commission meeting.

31. Apparently, the Commission is corrupt and will protect the illegal activities of the DPS Crime Lab at any cost. However, the Federal Bureau of Investigation (FBI) is charged with ensuring that every DNA lab meets federally mandated FBI Quality Assurance Standards (QAS) in order to continue

-14-

operating. Just the fact that the DNA degraded while in DPS Lab custody is a major violation. The DPS lab not filing a self-disclosure with the FBI is another major violation. Plaintiff prepared a second complaint for submission to the FBI ("Complaint to FBI"). The Complaint to FBI covered the original complaint to the Commission and the Commission's illegal actions.

32. Commissioner Bruce Budowle is a twenty-six-year veteran of the Federal Bureau of Investigation. At Commission meetings, he often speaks of MOUs (Memorandum of Understanding) that he has with the FBI.

33. Plaintiff went to the Houston Field Office of the FBI on the afternoon of August 5, 2019 to file his complaint against the Commission. However, the FBI agents/employees, under the direction of SAIC Perrye K. Turner, already knew who Plaintiff was and why he had come to the FBI office. The FBI officials refused to accept the Complaint to FBI either in person or by providing an email address for submission. The FBI Agent also refused to accept the web address for a Dropbox® in order to download the Complaint to FBI themselves. Public corruption involving FBI veterans is apparently not included in the "See Something, Say Something" promotional campaign.

34. Commissioner Bruce Budowle had contacted his co-conspirators at the FBI who refused to accept and investigate a

legitimate complaint from a U.S. Citizen. In fact, the FBI notified the target of the complaint, Commissioner Budowle, that the Plaintiff had attempted to file a complaint against him. This is the height of tyranny and oppression, without using outright violence, by the government. The FBI did nothing but expose the Plaintiff to possible retaliation by actors shown to be unethical and willing to manufacture false evidence in a capital murder trial. Again, the "shock the conscience" standard is easily surpassed. Plaintiff wrote a cover letter (Appendix page A13) to accompany the Complaint to FBI and gave it to the agent. A copy of the Commission's Disposition Letter regarding the case that was received by the Plaintiff (Appendix page A14) was also given to the agent to authenticate and prove the Plaintiff's standing. The cover and disposition letters remain in the FBI's possession along with the FBI's video of the interview with the Plaintiff.

### Plaintiff's Damages

35. At the time he was wrongfully defamed and falsely discredited by the Commission, Plaintiff was a successful and respected DNA expert/consultant in Houston, Texas.  Since the May 3, 2019 Commission meeting, Plaintiff has not received several cases that were expected at the time of the Commission meeting and casework has declined drastically.

36. Since attempting to submit the Complaint to FBI, Plaintiff has lived in fear of continued government oppression and/or retaliation in order to silence him. Plaintiff also experiences periods of anxiety, despair, depression and agoraphobia. The Plaintiff has suffered enormous undue pain and suffering.

37. As a result of the foregoing, Plaintiff has suffered almost unfathomable damages, all proximately caused by Defendants' misconduct.

**Policies and Practices:**

38. The Commission's actions during this period of were governed by the TEXAS FORENSIC SCIENCE COMMISSION, POLICIES AND PROCEDURES, ADOPTED FEBRUARY 2, 2018 (Attachment 6). Section 1.0 states the investigative mission of the Commission is to conduct "thorough and fair investigations."

39. Section 4.0 of the POLICIES AND PROCEDURES describes the appointment of an investigative panel and its duties after it is appointed.  It clearly states that investigations are performed by a three-person investigative panel appointed by the entire Commission. However, the sham, unauthorized Budowle/DPS-Houston panel investigated the complaint and cleared the DPS Lab of misconduct <u>before</u> a legitimate investigative panel was appointed. The legitimate investigative panel was formed,

according to the presentation, only to "guide corrective action process." The actual complaint was never investigated.

40. Section 4.0(g) states:

(a)    FSC  Investigation  Panels  may  meet  by  telephone  for information-gathering purposes only.  All deliberative discussions by Panels shall be held in open, public meetings in accordance with the Texas Open Meetings Act or other applicable law.

An investigation panel had not been appointed at the time of the sham investigation.  No discussions were held in "open, public meetings in accordance with the Texas Open Meetings Act." As described above, the Commission intentionally hid incriminating documents from public view in violation of the Act.

41. Section 17.0 contains the Conflicts Policy:

(1)    Any member of the FSC who has a personal or private interest in a matter pending before the FSC shall publicly disclose the fact to the FSC during an open meeting.   The Commissioner may not vote or otherwise participate in the matter in which he or she has an interest.   The disclosure shall be entered in the minutes of the meeting.

Commissioner Bruce Budowle, who led the sham investigation into his publication co-author, Andrew McWhorter, did not disclose this relationship during the open meeting. Instead, the twenty-six-year FBI veteran conspired with his co-author and the other Defendants to cover up the DPS Lab's deficiencies and misconduct.

42. From the POLICIES AND PROCEDURES Appendix A:

"One of the Commission's statutory duties is to "require a crime laboratory that conducts forensic analyses to report

-18-

professional negligence or professional misconduct to the Commission."  TEX. CODE CRIM. PROC. § 38.01, Sec. 4(a)(2)."

The DPS Lab did not self-report the DNA degradation when discovered in 2017. This is a violation of the Texas Code of Criminal Procedure section cited above.

## Count I -- 42 U.S.C. § 1983

**Due Process**

43. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

44. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a thorough and fair investigation as described by Texas statutes.

45. In the manner described more fully above, the Defendants deliberately conducted a sham investigation to hide the DPS Lab's actions including the data and documents generated by the DPS Lab. The directed sham investigation was a clear violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The unlawful motive of hiding DPS Lab misconduct from the public easily raises this to level that "shocks the conscience" and, accordingly, raises this to a substantive due process violation.

46. As a result of this violation of his constitutional rights, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

47. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

48. The misconduct described in this Count was undertaken contrary to the Fourteenth Amendment to the United States Constitution, Texas Code of Criminal Procedure and/or Texas Administrative Code in the manner described more fully above.

## Count II -- 42 U.S.C. § 1983

**6th Amendment**

49. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

50. As described more fully above, one or more of the Defendants, all while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, denied Plaintiff the right to confront his accuser in violation of his constitutional rights.

51. As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

52. The misconduct described in this Count was

-20-

objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

53. The misconduct described in this Count was undertaken against the Confrontation Clause of 6th Amendment to the United States Constitution in the manner described more fully above.

## Count III -- 42 U.S.C. § 1983

**5th Amendment**

54. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

55. As described more fully above, one or more of the Defendants, all while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, denied Plaintiff's constitutional rights to Due Process and Equal Protection. This includes FBI SAIC PERRYE K. TURNER and other AS-YET-UNKNOWN DEFENDENTS at the FBI. This complaint is a BIVENS claim against these defendants.

56. As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

57. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

58. The misconduct described in this Count was undertaken against the Due Process Clause of the 5th Amendment to the United States Constitution in the manner described more fully above.

## Count IV -- 42 U.S.C. § 1983

**Equal Protection**

59. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

60. As described more fully above, Defendants, all while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, denied Plaintiff equal protection of the law in violation of his constitutional rights.

61. Specifically, these Defendants actively participated in, or personally caused, misconduct in terms of abusing the Plaintiff in a manner calculated to oppress, coerce and intimidate him into silence. Said misconduct was motivated by the desire to hide the misconduct of the state DPS Lab.  The efforts by the Commission to hide the degraded DNA shows previous knowledge of the wide-spread problem. The Plaintiff was again denied equal protection when the FBI conspired to hide the illegal actions of the Commission instead of investigating a legitimate complaint by a U.S. Citizen.

62. As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

63. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

64. The misconduct described in this Count was undertaken contrary to the Texas Code of Criminal Procedure and United States Constitution in the manner described more fully above.

### Count IV -- 42 U.S.C. § 1985(3) Conspiracy
### Conspiracy to Deprive Constitutional Rights

65. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

66. As described more fully above, each of the Defendants conspired, directly or indirectly, for the purpose of depriving Plaintiff of Due Process of the law.

67. In so doing, Defendants took actions in furtherance of this conspiracy, causing injury to Plaintiff.

68. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

69. The misconduct described in this Count was undertaken contrary to the Texas Code of Criminal Procedure and/or Texas

Administrative Code and the United States Constitution in the
manner described more fully above.

### Count V -- 42 U.S.C. § 1983

**Failure to Intervene**

70. Each of the Paragraphs of this Complaint is
incorporated as if restated fully herein.

71. In the manner described above, during the
constitutional violations described above, one or more of the
Defendants (and other as-yet-unknown state and FBI officials)
stood by without intervening to prevent the misconduct.

72. As a result of the Defendants' failure to intervene to
prevent the violation of Plaintiff's constitutional rights,
Plaintiff suffered pain and injury, as well as emotional
distress. These Defendants had a reasonable opportunity to
prevent this harm but failed to do so.

73. The misconduct described in this Count was
objectively unreasonable and was undertaken intentionally with
willful indifference to Plaintiff's constitutional rights.

74. The misconduct described in this Count was undertaken
contrary to the Texas Code of Criminal Procedure and United
States Constitution in the manner described more fully above.

## Count VII -- State Law Claim

**Civil Conspiracy**

75. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

76. As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

77. In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.

78. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

79. As a proximate result of Defendants' conspiracy, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

## Count VIII -- State Law Claim

**Intentional Infliction of Emotional Distress**

80. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

81. The acts and conduct of the Defendants as set forth above were extreme and outrageous. The Defendants intended to

cause or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

82. Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

83. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

84. As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

WHEREFORE, Plaintiff, ROBERT COLLINS, respectfully requests that this Court enter judgment in his favor and against Defendants, Present Commissioners of the TEXAS FORENSIC SCIENCE COMMISSION, JEFFREY J BARNARD, BRUCE BUDOWLE, PATRICK BUZZINI, MARK DANIEL, NANCY DOWNING, JASMINE DRAKE, DENNIS JOHNSON, SARAH KERRIGAN, JARVIS PARSONS, General Counsel LYNN ROBITAILLE GARCIA, DPS Lab Director BRADY MILLS, MCADA ANDREW JAMES, FBI SAIC PERRYE K. TURNER, other AS-YET-UNKNOWN STATE OFFICIALS, and other AS-YET-UNKNOWN FBI AGENTS awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities, as well as

any other relief this Court deems appropriate. Plaintiff requests compensatory damages of $1,000,000 from each Defendant. The egregious motives and damage to the public trust requires significant punitive damages. The Plaintiff requests a minimum of $10,000,000 in punitive damages from each defendant. Because the Defendants were involved in a conspiracy, Plaintiff requests the damage awards be tripled to $3,000,000 in compensatory damages and $30,000,000 in punitive damages from each defendant.

## JURY DEMAND

Plaintiff, ROBERT COLLINS, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.


RESPECTFULLY SUBMITTED:


Dr. Robert Collins
3920-6 West Alabama Street
Houston, TX 77027
robertcollinsphd@gmail.com
832-767-2129


Mailing Address:

Dr. Robert Collins
2802 Timmons Lane #22356
Houston, TX 77027

## List of Attachments

Attachment 1 -- TX Code Criminal Justice §38.43

Attachment 2 -- Texas Administrative Code rule §28.92

Attachment 3 -- Quarterly Meeting Minutes 050319

Attachment 4 -- Video excerpt from 5-3-2019 Commission Meeting

Attachment 5 -- AG's Texas Open Meetings Act Handbook 2018

Attachment 6 -- POLICIES AND PROCEDURES

Attachment 7 -- Detailed Complaint to TFSC  1-24-2019

Folder -- Appendix pages without highlighting and Complaint